**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

CTD NETWORKS LLC,

               *Plaintiff*,

     v.

GOOGLE LLC,

               *Defendant*.

Case No. 6:22-cv-01042-XR

JURY TRIAL DEMANDED

**GOOGLE'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT
UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

<u>**TABLE OF CONTENTS**</u>

I.      INTRODUCTION ...................................................................................................1

II.     BACKGROUND ...................................................................................................1

        A.      The Deficiencies With Plaintiff's First Amended Complaint................................1

        B.      The Court's Order And Instructions At The April 10 Hearing..............................2

        C.      Plaintiff Repeats The Same Deficiencies In The Second Amended
                Complaint..........................................................................................................4

III.    ARGUMENT ........................................................................................................5

        A.      The SAC Still Improperly Accuses An Amalgamation Of Distinct
                Products.............................................................................................................5

        B.      Plaintiff Still Fails To Allege That Google Provides Any Of The Hardware
                Necessary For Infringement.............................................................................8

        C.      Plaintiff Still Fails To Plausibly Allege Infringement Of Material Claim
                Elements In The '470, '974, and '442 Patents....................................................12

                1.      Plaintiff Fails To Plausibly Allege Infringement Of The Counter-
                        Offensive Measures Required By The '470 And '974 Patents.................13

                2.      Plaintiff Fails To Plausibly Allege Infringement Of The Custom
                        Antivirus Software Limitations Required By The '442 Patent.................15

        D.      Plaintiff Reasserts Claims For Willful Infringement That Are Identical To
                Those Claims The Court Already Dismissed........................................................16

IV.     CONCLUSION....................................................................................................17

## TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Acceleration Bay LLC v. Activision Blizzard, Inc.*,
    324 F. Supp. 3d 470 (D. Del. 2018) .......................................................................10

*Airs Aromatics, LLC v. Victoria's Secret Stores Brant Mgmt., Inc.*,
    744 F.3d 595 (9th Cir. 2014) ..................................................................................12

*AK Meeting IP LLC v. Zoho Corp.*,
    No. 1:22-CV-1165-LY, 2023 WL 1787303 (W.D. Tex. Feb. 6, 2023).....................5, 6, 7, 12

*ALD Social LLC v. Google LLC*,
    No. 6:22-cv-00972-FB, 2023 WL 3184631 (W.D. Tex. Mar. 17, 2023) ................13

*ALD Social, LLC v. Verkada, Inc.*,
    — F. Supp. 3d —, 2023 WL 1802418 (N.D. Cal. Feb. 7, 2023)............................13

*AlexSam, Inc. v. Aetna, Inc.*,
    No. 3:19-cv-01025, 2020 WL 5502323 (D. Conn Sept. 11, 2020).........................10

*Anokwuru v. City of Houston*,
    990 F.3d 956 (5th Cir. 2021) .............................................................................7, 8, 12

*Becton Dickinson & Co. v. C.R. Bard, Inc.*,
    922 F.2d 792 (Fed. Cir. 1990)...................................................................................5

*Bot M8 LLC v. Sony Corp. of Am.*,
    4 F.4th 1342 (Fed. Cir. 2021) .........................................................................7, 15, 16

*Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*,
    631 F.3d 1279 (Fed. Cir. 2011)......................................................................1, 8, 9, 10, 12

*Cephalon, Inc. v. Watson Pharm., Inc.*,
    707 F.3d 1330 (Fed. Cir. 2013)..................................................................................7

*Chapterhouse, LLC v. Shopify, Inc.*,
    No. 2:18-cv-00300-JRG, 2018 WL 6981828 (E.D. Tex. Dec. 11, 2018)................10

*De La Vega v. Microsoft Corp.*,
    No. W-19-CV-00612-ADA, 2020 WL 3528411 (W.D. Tex. Feb. 11, 2020)...........13

*Garrett v. TP-Link Rsch. Am. Corp.*,
    No. 20-cv-03491, 2020 WL 5517202 (N.D. Cal. Sept. 14, 2020)...........................10

*HourExchange, LLC v. Student Loan Benefits, Inc.*,
    No. 1:22-CV-00356-RP, 2023 WL 139150 (W.D. Tex. Jan. 9, 2023)....................10

*Joao Control & Monitoring Sys. of Cal., LLC v. Sling Media, Inc.*,
No. C-11-3277, 2012 WL 3249510 (N.D. Cal. Aug. 7, 2012) ...............................................10

*L&W, Inc. v. Shertech, Inc.*,
471 F.3d 1311 (Fed. Cir. 2006)............................................................................................5

*Myart v. Mach*,
No. SA-19-CV-00507-OLG, 2019 WL 5556558 (W.D. Tex. Oct. 28, 2019).........................12

*Ottah v. Fiat Chrysler*,
884 F.3d 1135 (Fed. Cir. 2018)......................................................................................15, 16

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005)..........................................................................................13

*Raptor, LLC v. Odebrecht Constr., Inc.*,
No. 17-21509-CIV, 2017 WL 3776914 (S.D. Fla. Aug. 31, 2017) .......................................10

*Sentius Int'l, LLC v. Apple Inc.*,
No. 4:20-cv-00477-YGR, 2020 WL 6081775 (N.D. Cal. Oct. 15, 2020) ..............................10

*Southwall Techs. Inc. v. Cardinal IG Co.*,
54 F.3d 1570 (Fed. Cir. 1995)..............................................................................................7

*Synchronoss Techs., Inc. v. Dropbox, Inc.*,
987 F.3d 1358 (Fed. Cir. 2021)............................................................................................8

*Traxcell Techs. LLC v. Google LLC*,
No. 22-cv-04807-JSC, 2022 WL 17072015 (N.D. Cal. Nov. 17, 2022) ...........................9, 10

*Vervain, LLC v. Micron Tech., Inc.*,
No. 6:21-CV-00487-ADA, 2022 WL 23469 (W.D. Tex. Jan. 3, 2022) ................................13

**FEDERAL STATUTES**

35 U.S.C. § 271(a) .........................................................................................................8, 9, 12

## I.    INTRODUCTION

Google moves to dismiss the Second Amended Complaint ("SAC"), which is virtually indistinguishable from the amended complaint Plaintiff proposed at the April 10 hearing that the Court already held insufficient.

The allegations in the SAC remain legally deficient for the same reasons the First Amended Complaint ("FAC") was deficient, each of which constitutes an independent ground for dismissal. *First*, the infringement allegations continue to mix and match multiple distinct Google products, confirming that Plaintiff is incapable of alleging that any single product practices each limitation of the asserted patent claims. *Second*, Plaintiff's infringement allegations still run headlong into *Centillion*, which held that when a patent claim recites a combination of software and hardware, a defendant does not infringe by providing only software. *Third*, Plaintiff still does not plausibly allege infringement of multiple key elements of the '470, '974, and '442 patents.

The SAC also reasserts claims for willful infringement that the Court already dismissed. While the Court told Plaintiff that it could seek leave to reassert such claims if it developed factual support for them during discovery, the SAC reasserts the claims with no factual support at all—the allegations are literally identical to those in the FAC that the Court already dismissed.

For each of these reasons, the SAC remains deficient. The Court should dismiss the SAC with prejudice, as further amendment would be futile.

## II.    BACKGROUND

### A.    The Deficiencies With Plaintiff's First Amended Complaint

The FAC alleged that a hodgepodge of distinct products infringed the asserted patents. In particular, the FAC alleged that the accused products were, "***by way of example and without limitation***, Google's cloud service Google Cloud and cybersecurity services Chronicle, Siemplify SOAR, Google Web Risk, and Google Cloud Armor." FAC ¶ 18 (Dkt. 15). The claim charts

attached to the FAC alleged that this smattering of products "collectively" infringed the patents when combined "together with various [unspecified] equipment, services, components, and/or software." FAC, Ex. E at 1, Ex. F at 2, Ex. G at 2, Ex. H at 2 (Dkt. 15-1). Each claim chart attached to the FAC relied on functionality and features from multiple, distinct products cobbled together and combined with hardware components supplied by Google's customers—ultimately alleging that the accused software products are "deployed *in the customer's network*" and that "*end customers*" deploy the software "*by themselves*." *Id.*, Ex. E at 1, Ex. F at 2, Ex. G at 2, Ex. H at 2.

Google moved to dismiss the FAC, arguing that the allegations were deficient because, *inter alia*, they failed to identify any single product that satisfies each limitation of any of the asserted patent claims. *See* Google's Mot. Dismiss FAC 9–12 (Dkt. 16). Plaintiff sought leave to amend its pleadings at the last minute, but Plaintiff's proposed amended complaint still relied on an amalgamation of distinct products—Google Chronicle, Siemplify SOAR, and Web Risk—"*by way of example and without limitation*." Pl.'s Mot. Am. Compl., Ex. 1 ¶ 18 (Dkt. 36-1). Similarly, the proposed claim charts alleged that Google infringed based upon its distribution of "a security suite known as Chronicle Security Operations" that includes "Chronicle SIEM, Chronicle SOAR, and Threat Intelligence." *Id.*, Ex. E at 1, Ex. F at 1, Ex. G at 1, Ex. H at 1 (Dkt. 36-2).

## B.    The Court's Order And Instructions At The April 10 Hearing

At the April 10 hearing, the Court held that both the FAC and plaintiff's proposed amended complaint were deficient because they failed to identify a single product that practices each limitation of the patent claims. With respect to Google's products in particular, the Court stated, "I'm not going to let you go with piecing together different products." Kwon Decl., Ex. A (4/10/2023 Hr'g Tr.) 22:13–15. Anticipating that Plaintiff might again try to cobble together various Google services under the umbrella "Chronicle Security Operations," the Court stated to Plaintiff's counsel:

> You are going to want an amended complaint saying Chronicle Security Operations and then I'm fully expecting that you're going to start throwing in [multiple] products . . . . I'm trying to give you some leeway to file an amendment but if you're going to do this, this services, which you are wanting to do plural not singular, you have to identify that you've met all the limitations of any asserted claim, and that's not where – I haven't seen you do that for multiple products amalgamated together.

*Id.* at 23:3–5, 23:21–24:2. The Court specifically advised Plaintiff that any amended complaint would need to allege that a single Google product infringes each asserted patent claim, and that Plaintiff would not be able to amalgamate "[Siemplify SOAR], Web Risk, Cloud Armor," and other Google products under the title "Chronicle Security Operations," as Plaintiff had attempted to do in its proposed amendments. *Id.* at 34:9–13.

While the Court granted Plaintiff leave to file a second amended complaint, the Court repeatedly instructed Plaintiff to pick a single accused product and not to use non-exclusive language, such as "by way of example" or "without limitation," in its amended pleading:

> I'm looking at paragraph 18, the accused instrumentalities or the accused products, and you already start off with a problem. You go "***by way of example and without limitation***." I mean, how is a defendant supposed to know which product is infringing with a phrase like that?

*Id.* at 7:17–21.[1]

> That was the same problem though because the current complaint says, again, "***by way of example and without limitation***" [multiple distinct products]. . . . So if I grant you leave to amend complaint I'm only going to see something on [a single product], is that what I'm hearing from you?

*Id.* at 17:4–12.

> You say that the accused products refer, "***by way of example***," and again "***without limitation***," so I have a heartburn with that language. And then you begin to name a whole bunch of different products, and at this motion to dismiss stage if that's what you're going to do you're going to have to tie in the limitations to each of these products and you failed to do that.

*Id.* at 34:2–8.

---

[1] Unless otherwise noted, all emphases are added.

The Court also dismissed Plaintiff's claims for willful infringement and pre-suit damages, holding that Plaintiff had failed to allege facts sufficient to support such claims. *Id.* at 35:23–24. The Court noted that Plaintiff could seek leave to reassert such claims later in the case in the event discovery revealed facts that would support them. *Id.* at 14:20–23, 35:23–36:2.

### C.    Plaintiff Repeats The Same Deficiencies In The Second Amended Complaint

In all material respects, the SAC is indistinguishable from the allegations that the Court rejected as inadequate at the April 10 hearing. Notwithstanding the Court's express instructions, the SAC defines the accused products non-exclusively and by reference to multiple distinct products: "'Accused Products' refers to, ***by way of example and without limitation***, Google's Chronicle Security Operations," which the SAC uses as an umbrella term to encompass "Chronicle SIEM, Chronicle SOAR, and Threat Intelligence." SAC ¶ 18 (Dkt. 43). Even the website screenshots incorporated into Plaintiff's allegations make clear that Chronicle SIEM, Chronicle SOAR, and Threat Intelligence are distinct products, not a single entity. SAC, Ex. E at 1; Ex. F at 1; Ex. G at 1; Ex. H at 1 (Dkt. 43-1).

Once again, Plaintiff repeats its mix-and-match theory of infringement, alleging in the accompanying claim charts that these three distinct products must be combined with each other, and also "together with various [unspecified] equipment, services, components, and/or software," to "collectively" infringe the asserted patents. SAC, Ex. F at 2–3; Ex. G at 2–3; Ex. H at 2–3. And once again, Plaintiff alleges that the identified Google software products must be combined with customer-supplied hardware, stating that the software is "deployed ***in the customer's network***," installed by customers on their own computers "***by themselves***." *Id.* The SAC also reasserts claims for willful infringement and pre-suit damages, which are identical to those the Court already dismissed. *See* SAC ¶¶ 21–22, 30–31, 39–40, Prayer (B).

## III.    ARGUMENT

The SAC should be dismissed with prejudice for the same reasons the FAC was deficient. *First*, Plaintiff improperly mixes and matches distinct features of separate products to amalgamate a theory of infringement. *Second*, Plaintiff admits the accused Google software must be combined with non-Google hardware to arrive at the allegedly infringing amalgamation. *Third*, Plaintiff does not allege that any Google product performs the counter-offensive measure limitations of the '470 and '974 patents or the antivirus software limitations of the '442 patent.

### A.    The SAC Still Improperly Accuses An Amalgamation Of Distinct Products.

The SAC fails to state a claim for infringement because it continues to rely on a medley of different features from multiple distinct products. Causes of action for patent infringement are product-specific, meaning that a plaintiff "must make a prima facie showing of infringement as to *each accused device*." *L&W, Inc. v. Shertech, Inc.*, 471 F.3d 1311, 1318 (Fed. Cir. 2006). "[E]very limitation set forth in a claim must be found in an accused product or process exactly or by a substantial equivalent" to establish direct infringement. *Becton Dickinson & Co. v. C.R. Bard, Inc.*, 922 F.2d 792, 796 (Fed. Cir. 1990). Consequently, a complaint that mixes and matches separate products, merely alleging that each product practices *some* of the patent limitations, is legally deficient. *See AK Meeting IP LLC v. Zoho Corp.*, No. 1:22-CV-1165-LY, 2023 WL 1787303, at *4 (W.D. Tex. Feb. 6, 2023) (dismissing complaint that "mixes and matches features of three distinct products," notwithstanding that the products were advertised on defendant's website as "integrated with each other").

Plaintiff does not identify how each of the accused products practices each limitation of the asserted patent claims, as instructed by the Court at the April 10 hearing. *See* 4/10/2023 Hr'g Tr. 34:4–8 ("And then you begin to name a whole bunch of different products, and at this motion to dismiss stage if that's what you're going to do you're going to have to tie in the limitations to

each of these products and you failed to do that.") Indeed, Plaintiff offers only one claim chart for each asserted patent, combining scattershot allegations regarding the three distinct products in an amalgamated fashion. The allegations in the SAC are virtually indistinguishable from the allegations the Court already held insufficient at the April 10 hearing.

Plaintiff alleges that three distinct Google products—"Chronicle SIEM, Chronicle SOAR, and Threat Intelligence," SAC ¶ 18—practice various elements of the asserted patent claims, but Plaintiff again relies entirely on vague charts that mix and match features from these distinct products. For example, Plaintiff's claim charts allege that **only** SIEM practices element [d] of claim 1 of the '442 patent, and that **only** SOAR practices elements [h] and [i] of that same claim. *See* SAC, Ex. E. Similarly, Plaintiff alleges that **only** SIEM practices element [f], and **only** SOAR practices element [i] of claim 1 of the '974 patent. SAC, Ex. H. The other claims involve similarly deficient amalgamations. *See, e.g.,* SAC, Ex. F (alleging that only Chronicle SIEM practices element [d], and only Chronicle SOAR practices elements [b] and [e] of claim 10 of the '614 patent); Ex. G (alleging that only Chronicle SOAR practices elements [f]–[j] of claim 1 of the '470 patent). Moreover, Plaintiff fails to allege that one of the accused products—Threat Intelligence—practices **any** element of **any** asserted claim. And, yet again, Plaintiff relies exclusively on annotated screenshots of Google's marketing materials, which show merely that the products are sometimes marketed together. *Id.*

Plaintiff's allegations are even more deficient than the allegations dismissed in the *AK Meeting* case, which is particularly instructive here. Like in this case, the plaintiff in *AK Meeting* alleged infringement based on a combination of three of the defendant's products, relying "entirely on a chart . . . which mixes and matches features of three distinct products" to assert infringement. 2023 WL 1787303, at *4. And, like here, the plaintiff's claim chart included

"annotations to screenshots taken from [the defendant's] website," which showed that "the [accused] products are sold as marketing bundles." *Id.* at *4–5.

The court in *AK Meeting* correctly dismissed the complaint. The court explained that mixing and matching accused products is improper and insufficient because a claim for infringement requires each accused product to embody all limitations of a patent claim. *Id.* at *4 (citing *Southwall Techs. Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1575 (Fed. Cir. 1995); *Cephalon, Inc. v. Watson Pharm., Inc.*, 707 F.3d 1330, 1340 (Fed. Cir. 2013)). The court also held that the plaintiff's "reliance on the products themselves" was "insufficient to show product integration" because "merely showing that the products are sold together" or sold in a "marketing bundle" does not adequately establish integration as a single infringing system. *Id.* at *4–5.

The same result applies here. Plaintiff alleges nothing more than that the accused products are occasionally marketed together, along with many other products, using the umbrella branding "Chronicle Security Operations." This is the same defect that caused the Court to previously hold that Plaintiff's allegations were insufficient, and Plaintiff has done nothing to remedy it. Mixing and matching products is particularly problematic in this case because the asserted patent claims require that a single "agent" perform each of the claimed functions, whereas Plaintiff points to disparate aspects of entirely different products as allegedly performing each claimed functionality. In essence, Plaintiff alleges that Google infringes because it makes several distinct products, each of which ***partially*** infringes. That is legally insufficient and requires dismissal. *Id.*; *Bot M8 LLC v. Sony Corp. of Am.,* 4 F.4th 1342, 1352–53 (Fed. Cir. 2021).

This dismissal should be with prejudice because Plaintiff has demonstrated through multiple deficient pleadings that further leave to amend would be futile. *See Anokwuru v. City of Houston*, 990 F.3d 956, 967–68 (5th Cir. 2021). Indeed, dismissal with prejudice is appropriate

because Plaintiff has had at least *four* opportunities to properly allege direct infringement: the original complaint, the FAC, the proposed second amended complaint, and the SAC. *See id.* at 968 ("[T]he district court did not err in denying his fifth attempt to plead his claims.").

### B.    Plaintiff Still Fails To Allege That Google Provides Any Of The Hardware Necessary For Infringement.

The SAC fails to state a claim for infringement for an additional, independent reason. Even under Plaintiff's amalgamated theory, infringement of the asserted patents requires a system that contains both software and hardware. Yet Google is alleged to have provided only software. Plaintiff therefore fails to allege that Google makes, uses, or sells a complete, infringing system.

Plaintiff alleges only direct infringement of its patents. *See* SAC ¶¶ 20, 29, 38, 47. A plaintiff alleging direct infringement must plead facts that show the defendant "makes, uses, offers to sell, or sells" a ***complete*** patented invention. 35 U.S.C. § 271(a). "Direct infringement by 'use' of a claimed system requires use of ***each and every element*** of the system." *Synchronoss Techs., Inc. v. Dropbox, Inc.*, 987 F.3d 1358, 1369 (Fed. Cir. 2021) (quoting *Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*, 631 F.3d 1279, 1284 (Fed. Cir. 2011)). Similarly, infringement by "making" or "selling" a system requires a ***complete*** infringing system: "one may not be held liable under § 271(a) for 'making' or 'selling' less than a complete invention." *Id.* at 1368.

From this basic rule derives a bright line: merely providing software for a customer to use does not constitute infringement of a patent that requires a combination of both software and hardware. *See Centillion*, 631 F.3d at 1286–88. In *Centillion*, the patent claimed a system for "collecting, processing, and delivering information from a service provider . . . to a customer." 631 F.3d at 1281. The claimed inventions required "data processing means," which were described in the specification as "data processing ***hardware*** and specially designed software." *See* U.S. Patent No. 5,287,270 at 2:67–3:1. Meanwhile, the accused software product was an electronic

billing system that customers could install on their personal computers. 631 F.3d at 1281–82. As in this case, the defendant was accused of providing software that customers installed on their own computers, the combination of which allegedly created infringing systems.

Given the plaintiff's infringement theory and the requirements of the patent, the Federal Circuit held in *Centillion* that—as a matter of law—the defendant could not be liable for infringement. First, the court held that the defendant, as a mere software provider, was not liable for any infringing "use" of the customers' personal computers. It explained:

> While [the defendant] may make the back-end processing elements, it never "uses" the entire claimed system because it never puts into service the personal computer data processing means. Supplying the software for the customer to use is not the same as using the system.

*Id.* at 1286. Furthermore, the *Centillion* court held that the defendant could not be liable for "making" or "selling" an infringing system because a complete system, as claimed in the patent, required ***hardware*** that the software provider did not make or sell:

> In order to "make" the system under § 271(a), [the defendant] would need to combine all of the claim elements—this it does not do. The customer, not [the defendant], completes the system by providing the "personal computer data processing means" and installing the client software.

*Id.* at 1288. For these reasons, the Federal Circuit held that the plaintiff's theory of direct infringement, as to the software provider, was legally deficient. *Id.*

It is commonplace and entirely appropriate for district courts to dismiss a complaint at the Rule 12 stage where the allegations run afoul of this basic rule from *Centillion*. This situation commonly arises where, like here, a software provider is accused of infringing a patent that requires a customer to combine the accused software with their own hardware (such as a personal computer or mobile device). *See, e.g.*, *Traxcell Techs. LLC v. Google LLC*, No. 22-cv-04807-JSC, 2022 WL 17072015, at *3–4 (N.D. Cal. Nov. 17, 2022) ("The FAC alleges that Google provides

software that a *user* can configure to practice Claim 1. But, as in *Centillion*, that is insufficient to state a claim against the software provider.").[2]

In this case, the SAC should be dismissed under *Centillion* because the purported inventions of the asserted patents require specially programmed hardware, which Google is not accused of providing. The specifications of each asserted patent expressly teach that the claimed systems comprise hardware components:

> The preexisting elements of this network security system are **the machines themselves**. It is assumed that these systems, which act as the nodes of a network, consist of **heterogeneous pieces of hardware** running different sorts of operating systems.

'442 patent 2:30–40; '470 patent 4:62–67; '974 patent 4:62–67.

---

[2] *See also, e.g.*, *HourExchange, LLC v. Student Loan Benefits, Inc.*, No. 1:22-CV-00356-RP, 2023 WL 139150, at *3–4 (W.D. Tex. Jan. 9, 2023) (dismissing complaint where plaintiff failed to allege how the accused software provider infringed the claimed "computer-implemented store module" limitation); *Garrett v. TP-Link Rsch. Am. Corp.*, No. 20-cv-03491, 2020 WL 5517202, at *3 (N.D. Cal. Sept. 14, 2020) ("An application to be installed on the mobile devices is not the same thing as the 'mobile device' itself."); *AlexSam, Inc. v. Aetna, Inc.*, No. 3:19-cv-01025, 2020 WL 5502323, at *15–17 (D. Conn Sept. 11, 2020) ("[Plaintiff] appears to conflate the health insurance plans offered by [defendant] with the alleged 'multifunction card system.'"); *Sentius Int'l, LLC v. Apple Inc.*, No. 4:20-cv-00477-YGR, 2020 WL 6081775, at *5 (N.D. Cal. Oct. 15, 2020) ("[T]he Court concludes that [plaintiff] fails to state a claim for direct infringement based on allegations of direction and control through the provision of infringing software to end-user devices."); *Chapterhouse, LLC v. Shopify, Inc.*, No. 2:18-cv-00300-JRG, 2018 WL 6981828, at *4 (E.D. Tex. Dec. 11, 2018) ("[T]here is no assertion that Defendant owns or controls the [accused] app; nor is there any assertion that Defendant directs, controls, or has any other relationship with the unknown owner of the [accused] app. Plaintiff's generic and conclusory statement regarding Defendant's use of the broader [accused] system aside, there is no allegation that one entity performs every step of Claim 1."); *Raptor, LLC v. Odebrecht Constr., Inc.*, No. 17-21509-CIV, 2017 WL 3776914, at *5 (S.D. Fla. Aug. 31, 2017) ("While Plaintiffs sufficiently allege Defendant obtained benefit from use of the System, nowhere in the Amended Complaint do Plaintiffs state facts sufficient for the Court to infer Defendant or any other Corporate Defendant controlled the system *as a whole*." (cleaned up)); *Joao Control & Monitoring Sys. of Cal., LLC v. Sling Media, Inc.*, No. C-11-3277, 2012 WL 3249510, at *6–8 (N.D. Cal. Aug. 7, 2012) ("The Court finds that *Centillion* controls here, and that Plaintiff has failed to allege a plausible theory of vicarious liability."); *Acceleration Bay LLC v. Activision Blizzard, Inc.*, 324 F. Supp. 3d 470, 485 (D. Del. 2018) ("[I]n making its argument, Plaintiff admits that Activision does not actually sell the processors required by the [asserted] patent claims.").

---

> ***Overview of Hardwar*e** Architectural Configuration. The architecture component of the present technical methodology . . . should be viewed with appropriate consideration for optimal flexibility and inclusiveness of ***any viable configuration of hardware*** and software components as is needed to perform the presently described functions . . . .

'614 patent 8:60–65. In addition, the patent claims themselves require hardware components as part of the claimed inventions. *See, e.g.*:

- "A distributed security system . . . said system comprising ***individual computers*** having agents . . . ." '442 patent, claim 1.

- "A distributed network security system . . . said system comprising . . . ***a server*** programmed to: compare data collected . . . ." '614 patent, claim 1.

- "A system . . . comprising: a plurality of distributed agents . . . each said distributing agent including ***a microprocessor*** adapted to: passively collect, monitor, and aggregate data . . . ." '470 patent, claim 1.

- "A system . . . comprising: a plurality of distributed agents . . . each said distributed agent comprising: ***at least one sensor*** that analyzes network traffic data . . . ***a distributed adaptive machine learning model*** that analyzes the aggregated data . . . and ***means for communicating*** at least the aggregated data to other distributed agents on a peer-to-peer basis." '974 patent, claim 1.

The fact that these claims require hardware components is not in dispute. Plaintiff's own allegations concede that the accused software products must be combined "together with various ***equipment***, services, ***components***, and/or software" to "collectively" infringe the asserted patents. SAC, Ex. F at 2; Ex. G at 2; Ex. H at 2. Indeed, Plaintiff's claim charts expressly describe the accused software products as a "lightweight software component" that is "deployed ***in the customer's network***" and that "end customers" deploy the accused software on their own computers "***by themselves***." SAC, Ex. E at 2–3; Ex. F at 2–3; Ex. G at 2–3; Ex. H at 2–3.

The SAC alleges only that Google provides customers with the accused ***software*** products. *See* SAC ¶ 18; Ex. E at 1 (alleging that Google "provides a security system . . . comprising Chronicle SIEM, Chronicle SOAR, and Threat Intelligence"). Nowhere in the SAC or the claim charts is there any allegation that suggests Google provides the hardware necessary for

infringement. Therefore, under *Centillion* and its progeny, Plaintiff fails to allege that Google uses, makes, or sells a complete infringing system as required under 35 U.S.C. § 271(a), and as a result the SAC must be dismissed.

This dismissal should be with prejudice because any amendment that is consistent with Plaintiff's admissions would be futile. *See Myart v. Mach,* No. SA-19-CV-00507-OLG, 2019 WL 5556558, at *13 (W.D. Tex. Oct. 28, 2019) ("Plaintiff cannot contradict the version of events that he conceded in his live pleading to cure deficiencies."); *Airs Aromatics, LLC v. Victoria's Secret Stores Brant Mgmt., Inc.*, 744 F.3d 595, 600 (9th Cir. 2014) ("A party cannot amend pleadings to directly contradict an earlier assertion made in the same proceeding. . . . Consequently, leave to amend would be futile." (internal quotation marks and brackets omitted)). Moreover, Plaintiff has already demonstrated, by failing to correct this deficiency numerous times, that additional leave to amend would be futile. *Anokwuru*, 990 F.3d at 967–68.

### C.    Plaintiff Still Fails To Plausibly Allege Infringement Of Material Claim Elements In The '470, '974, and '442 Patents.

Plaintiff's infringement allegations are insufficient for yet a third reason—they completely ignore material claim elements in three of the asserted patents. Every claim in the '470 and '974 patent requires generating a "counteroffensive measure" to counter-attack a putative attacker's computer. Every claim in the '442 patent requires custom antivirus software updates uniquely tailored to the particular vulnerabilities of individual computers on the network. None of the accused software products meet these key claim limitations. And, more importantly, Plaintiff does not allege that any accused software plausibly meets these limitations.

Even at the pleading stage, a plaintiff asserting direct infringement "must plead facts that plausibly suggest that the accused product meets each limitation of the asserted claim or claims." *AK Meeting*, 2023 WL 1787303, at *3. And even under a liberal pleading standard, "a plaintiff

may still fail to plausibly state a claim where (1) the infringement allegation rests on an implausible claim construction, . . . or (2) the factual allegations are actually inconsistent with and contradict infringement." *ALD Social LLC v. Google LLC*, No. 6:22-cv-00972-FB, 2023 WL 3184631, at *3 (W.D. Tex. Mar. 17, 2023). Courts routinely resolve these issues at the Rule 12 pleading stage.[3] Under these principles, Counts I, III, and IV of the SAC should be dismissed.

### 1.    Plaintiff Fails To Plausibly Allege Infringement Of The Counter-Offensive Measures Required By The '470 And '974 Patents.

Claim 1 of the '470 patent requires generating "***counter-offensive measures***" that result in "***disabling an [attacker's] operating system*** . . . until/unless ***the presumed attacker*** is able to prove to the machine owner/victim that the presumed attacker had been authorized." Claim 1 of the '974 patent similarly requires "a distributed adaptive machine learning model . . . generating ***counteroffensive measures*** in response to" a perceived threat.

Patent claims "must be read in view of the specification, of which they are a part." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005). Here, the '470 and '974 patents share a specification that, importantly, distinguishes between "defenses" and "counter offensive measures." '974 patent 22:22–39. In the specification, "defense" refers to ***defensive*** measures, such as "security software which scan[s] for software vulnerabilities and recommend[s] security

---

[3] *See, e.g.*, *ALD Social, LLC v. Verkada, Inc.*, — F. Supp. 3d —, 2023 WL 1802418, at *3 (N.D. Cal. Feb. 7, 2023) (granting Rule 12 dismissal where "the Complaint require[d] either implausible claim construction or ma[de] allegations inconsistent with infringement"); *Vervain, LLC v. Micron Tech., Inc.*, No. 6:21-CV-00487-ADA, 2022 WL 23469, at *5 (W.D. Tex. Jan. 3, 2022) (granting Rule 12 dismissal where plaintiff "failed to plausibly allege infringement of the hot blocks limitations," which were "material to practicing the asserted claim" because "these limitations capture[d] the point of novelty"); *De La Vega v. Microsoft Corp.*, No. W-19-CV-00612-ADA, 2020 WL 3528411, at *6–7 (W.D. Tex. Feb. 11, 2020) (granting Rule 12 dismissal where plaintiff failed to allege "even a short written description of how the accused instrumentalities [met] the 'coupling' limitation").

patches." '974 patent 22:40–62. In contrast, the term "counter offensive measures" refers to "[p]erforming ***direct counter offensive measures against an attacker***." '974 patent 22:63–64.

There are only two types of counter-offensive measures disclosed in the patents' specification. First, the patents reference a prior art method of counterattack involving "a destructive virus, e.g., which wipes clean the hard drive" of an attacker's computer. '974 patent 23:18–19. But this type of destructive counterattack is prone to "significant risks of inadvertently attacking a machine which is not a threat, for example, by forgetting to add that machine to a white list." '974 patent 22:64–67. Thus, the '470 and '974 patents claim to propose a second, novel idea for a counterattack that, instead of wiping an attacker's hard drive, simply locks out an attacker from their own machine by disabling the attacker's operating system:

> In short, what is proposed is ***a counteroffensive measure . . . which upon infecting or otherwise accessing the attacker's (or unauthorized accessor's) machine invokes the operating system to shut down***. The victim of the original presumed attack holds a vaccine to reverse the operating system shutdown which typically requires that the original attacker prove that the access was legitimate or authorized and/or for the victim to verify that no harm was done on his/her machine or network.

'974 patent 23:36–44. The purported benefit of this "inventive" counter-offensive measure is that "the counter attack would be as harmful to the would-be attacker as a traditional destructive virus, [but] it would be potentially immediately reversible and innocuous to a mistaken attacker (perhaps a legitimate intended authorized party)." '974 patent 23:31–35.

There is no escaping the fact that the '470 and '974 patent claims require the counter-offensive measure described in the specification: *i.e.,* disabling an attacker's operating system and holding it hostage until the attacker can prove they are not an attacker. Yet Plaintiff completely ignores this material limitation and fails to accuse any Google product of infringing it. With respect to the '470 patent, Plaintiff merely alleges that "SOAR can use playbooks to quarantine or disable infected end point computers"—that is, Plaintiff has alleged that SOAR disables the victim's, not

the attacker's, computer. SAC, Ex. G at 7. Plaintiff alleges even less with respect to the '974 patent, alleging only that "SOAR can run playbooks in response to an alert trigger, where the alert provides information about the threat event." SAC, Ex. H at 8.

Plaintiff's allegations are wholly detached from what the claims require. Even accepting all alleged facts as true, the SAC does not state a viable claim for direct infringement because under *any* plausible interpretation of the patents, the requisite "counter-offensive measure" must involve counterattacking *an attacker's computer*. No plausible interpretation of this claim term could be satisfied by the *defensive* act of quarantining *an infected computer*, as Plaintiff alleges. Counts III and IV of the SAC therefore must be dismissed, as the allegations (1) rely on an implausible interpretation of what constitutes the claimed invention, *Ottah v. Fiat Chrysler*, 884 F.3d 1135, 1141–42 (Fed. Cir. 2018), and (2) are actually inconsistent with infringement, *Bot M8 LLC*, 4 F.4th at 1354.

### 2. Plaintiff Fails To Plausibly Allege Infringement Of The Custom Antivirus Software Limitations Required By The '442 Patent.

Claim 1 of the '442 patent requires a computer network that runs "agents" on various computers, where "each said agent schedules the associated individual computers for *different anti-viral software updates* based on different levels of probability of an intrusion or attack" and where "each said agent suspends said schedule and *immediately provides the anti-viral software update to the associated individual computer* when an intrusion or attack of any computer in said computer network is detected." '442 patent 16:14–27.

These claim limitations result in an extraordinarily specific and narrow claim. Each agent in the network must schedule individual computers to receive custom antivirus software updates *based on each computer's unique vulnerability to attack*. Each agent in the network must also

"**_immediately_** provide[] the anti-viral software update to the associated individual computer when an intrusion or attack of **_any_** computer in said network is detected." '442 patent 16:14–27.

Plaintiff's allegations completely ignore these requirements. Plaintiff merely alleges that SOAR can be used to "schedule scripts to run periodically, which can include software updates" for third-party antivirus software like "McAfee Agent." SAC, Ex. E at 9–10. Plaintiff fails to plausibly identify any Google product that performs the specific elements of the custom antivirus software required by the '442 patent. Accordingly, Count I of the SAC must also be dismissed because the allegations (1) rely on an implausible interpretation of what constitutes the claimed invention, *Ottah*, 884 F.3d at 1141–42, and (2) are actually inconsistent with infringement, *Bot M8 LLC*, 4 F.4th at 1354.

### D.    Plaintiff Reasserts Claims For Willful Infringement That Are Identical To Those Claims The Court Already Dismissed.

The Court previously dismissed Plaintiff's claims for willful infringement as insufficiently pleaded. *See* 4/10/2023 Hr'g Tr. 35:23–24. Yet, now, Plaintiff realleges identical willfulness allegations in its SAC without adding anything new. *Compare* FAC ¶¶ 21–22, 30–31, 39–40, Prayer (B); *with* SAC ¶¶ 21–22, 30–31, 39–40, Prayer (B). Plaintiff made no attempt to add factual allegations to support its willful infringement claims in the SAC, nor did it do anything else to remedy the deficiencies that caused the Court to initially dismiss those claims. Plaintiff's willfulness allegations should be dismissed from the SAC for the same reasons that the Court dismissed them from the FAC. *See* Google's Mot. Dismiss FAC 18–19 (Dkt. 16); Google's Reply ISO Mot. Dismiss FAC 7–8 (Dkt. 20).

## IV.    CONCLUSION

For the reasons stated above, the Court should dismiss the SAC with prejudice.

DATED: May 22, 2023                    Respectfully submitted,

*/s/ Nathaniel St. Clair, II*
Erica Benites Giese (TX Bar No. 24036212)
egiese@jw.com
Amanda N. Crouch (TX Bar No. 24077401)
acrouch@jw.com
JACKSON WALKER L.L.P.
112 E. Pecan Street, Suite 2400
San Antonio, Texas 78205
Telephone: (210) 978-7900
Fax: (210) 242-4646

Zachary M. Briers (*admitted to practice before the Western District of Texas*)
zachary.briers@mto.com
Heather E. Takahashi (*admitted to practice before the Western District of Texas*)
heather.takahashi@mto.com
Ted T. Kang (*pro hac vice*)
ted.kang@mto.com
Adam W. Kwon (*pro hac vice*)
adam.kwon@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, California 90071-3426
Telephone: (213) 683-9100
Fax: (213) 687-3702

Evan J. Mann (*pro hac vice*)
evan.mann@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105
Telephone: (415) 512-4000
Facsimile: (415) 512-4077

***Attorneys for Defendant Google LLC***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 22, 2023, a true and correct copy of the foregoing document was served electronically, via ECF, on all counsel of record who are deemed to have consented to such service under the Court's local rules.

*/s/ Nathaniel St. Clair, II*
Nathaniel St. Clair, II
